1  NATHAN B. CAMUTI (SBN 300568)
   nate@camutilaw.com
2  ANDREW R. COWAN (SBN 356310)
   andrew@camutilaw.com
3  CAMUTI LAW GROUP, APC
   33 Brookline
4  Aliso Viejo, CA 92656
   Telephone: 949.716.5565
5
   *Attorneys for Plaintiff*
6

7

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  OBESITY RESEARCH              Case No.: 25-cv-0877-BJC-AHG
    INSTITUTE, LLC;
12                               **MEMORANDUM OF POINTS AND**
                                 **AUTHORITIES IN SUPPORT OF**
13          Plaintiff,           **PLAINTIFF'S *EX PARTE***
                                 **APPLICATION FOR LEAVE TO**
14       v.                      **SERVE THIRD-PARTY SUBPOENA**
                                 **PRIOR TO A RULE 26(f)**
15                               **CONFERENCE**
    SUNRISE SELECTIONS LLC, et
16  al.;

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................... 2

   A.  Discovery of Infringement and Initial Enforcement Efforts ......................... 3

   B.  Escalating Consumer Confusion and Online Proliferation ........................... 3

   C.  Filing Suit and Continued Infringement ...................................................... 4

   D.  Plaintiff Needs Judicial Intervention ........................................................... 5

III.  LEGAL STANDARD ................................................................................ 6

IV.  ARGUMENT .............................................................................................. 7

   A.  Plaintiff Identifies the Doe Defendant with Sufficient Specificity ............... 7

      1.   Plaintiff Has Identified That the Infringing Conduct Was Committed By Persons or Entities ................................................................................ 7

      2.   This Court Has Personal Jurisdiction Over the Doe Defendants ............. 8

      3.   Plaintiff Has Identified All Previous Steps Taken to Locate the Unknown Doe Defendants ................................................................................... 17

      4.   Plaintiff's Complaint Could Withstand a Motion to Dismiss ................ 18

      5.   There is a Reasonable Likelihood that Plaintiff Can Identify the Doe Defendants and Effectuate Service ....................................................... 19

V.   CONCLUSION ......................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*808 Holdings LLC v. Collective of Jan. 3, 2012 Sharing Hash*, No. CV 12-2251-CAS (EX), 2012 WL 13012725 (C.D. Cal. Oct. 1, 2012) ...................................... 6

*AMA Multimedia LLC v. Unknown Parties*, 2015 WL 13651008 (D. Ariz. Sept. 23, 2015) ............................................................................................................................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 19

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) ............... 9

*Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021) ........................ 10, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ......................................... 19

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) .... 10, 11, 12, 16

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) ............................................ 8

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) .............. 17

*Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ............. 7, 18

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) ........................... 14

*Distinct Media Ltd. v. Doe Defendants 1-50*, No. CV 15-03312 NC, 2015 WL 13389609 (N.D. Cal. Sept. 29, 2015) ...................................................................... 7

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ...................... 9

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ................................................. 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .......... 9, 10

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) ........... passim

*In re Countrywide Fin. Corp. Derivative Litig.*, 542 F.Supp.2d 1160 (C.D. Cal. 2008) ..................................................................................................................... 6

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1935) ................................................ 8

*Keeton v. Hustler Mag., Inc.*, 465 U.S. 770 (1984) ........................................... 9, 10

*Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987) ..................................................... 9, 17

*Malibu Media, LLC v. Doe*, 319 F.R.D. 299 (E.D. Cal. 2016) ....................... 6, 7, 20

*Malibu Media, LLC v. Doe*, No. CV 16-1916-GPC (JMA), 2016 WL 6216183 (S.D. Cal. Oct. 25, 2016) ......................................................................... 18

*Malibu Media, LLC v. Does*, No. CV 12-0651-DOC (JPRx), 2012 WL 13019945 (C.D. Cal. May 10, 2012) ...................................................................... 18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ....... 8, 9, 10

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ......................... 17

*Pennymac Loan Servs., LLC v. Doe*, 2018 WL 6521577 (C.D. Cal. Oct. 31, 2018) . 7

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) ......................................................... 9

*Quad Int'l, Inc. v. Doe*, No. CV 1:12-02050-AWI, 2013 WL 178141 (C.D. Cal. Jan. 16, 2013) .......................................................................................... 7

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ... 9, 10, 17

*Strike 3 Holdings, LLC v. Doe*, No. 18-12585 (NLH)(JS), 2020 WL 3567282 (D.N.J. June 30, 2020) ......................................................................... 6

*Walden v. Fiore*, 571 U.S. 277 (2014) ........................................................................ 9

*Whaleco Inc. v. Arslan*, 2024 WL 342459 (D. Ariz. Jan. 30, 2024) ......................... 7

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............. 11, 13, 15

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) ................................................................................ 10, 11, 12, 16

**Statutes**

28 U.S.C. § 1331 ........................................................................................................ 18

28 U.S.C. § 1338 ........................................................................................................ 18

28 U.S.C. § 1391 ........................................................................................................ 19

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff Obesity Research Institute, LLC (Plaintiff) hereby respectfully submits this Memorandum of Points and Authorities in support of its *Ex Parte* Application for leave to serve a third-party subpoena on Namecheap.com prior to a Rule 26(f) conference.

### I.    INTRODUCTION

Plaintiff is the owner of Federal Trademark Registration No.'s 5798120 and 3326691 on the Principal Register in the United States Patent and Trademark Office for the trademarks "LIPOZENE" (Plaintiff's Marks) registered in connection with dietary supplements. *See* Complaint (Compl.), ¶ 16. Plaintiff's success in this market has led numerous users on the Internet to illegally infringe Plaintiff's trademarks on a large scale, including numerous sellers who utilize the e-commerce platforms provided by Amazon, eBay, and Walmart (E-Commerce Sites) to market, sell, and ship infringing goods to consumers throughout the United States. Plaintiff has also identified that sellers use standalone websites to market infringing products, such as the website www.lipozem.com.

Plaintiff has identified that Namecheap.com is the host of the www.lipozem.com site, utilized by one such unauthorized retailer. However, Plaintiff cannot obtain further information about this infringing store without conducting discovery because the ownership information for the website as viewable on lookup.icann.org is redacted. Because this infringing retailer operates a web store hosted by Namecheap.com, Namecheap.com is the only party with the information necessary to properly identify the unknown Doe Defendant operating the www.lipozem.com website by correlating the infringing retailer's website with identifying information that would allow Plaintiff to properly plead the unidentified infringing retailer into this lawsuit. To properly investigate the infringement, Plaintiff requires the identities of the infringing retailer associated with www.lipozem.com. As a result, Plaintiff now seeks leave of this Court to serve

limited, immediate discovery on Namecheap.com so that Plaintiff may learn the identity of the Doe Defendant operating the identified website, further investigate the Doe Defendant's role in the infringement, and effectuate service upon the Doe Defendant. Further driving expediency, the infringing sales made by the Doe Defendant on www.lipozem.com are ongoing. Further, while the website was deactivated around April of 2025, the website has recently become active again. The resulting irreparable harm to Plaintiff's goodwill and brand due to the infringement by the Doe Defendant operating the www.lipozem.com website compounds daily.

Plaintiff now seeks leave of the Court to serve a Rule 45 subpoena on Namecheap.com. The subpoena will only demand the true name, addresses, contact information, and sales revenues of the Doe Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot identify or properly serve the Doe Defendant associated with the www.lipozem.com website, nor effectively pursue this lawsuit and protect its trademark rights.

The factual developments since Plaintiff initiated this lawsuit, including the emergence of new infringing websites, ongoing consumer confusion, and the refusal of retail platforms to continue taking action absent a court order underscore the need for immediate judicial intervention by the Court to rectify the ongoing, irreparable harm Plaintiff is suffering to its brand and reputation. Given that no Defendant has indicated opposition and the record provides clear evidence of the significant harm Plaintiff continues to suffer, Plaintiff respectfully requests that the Court issue an order allowing Plaintiff to serve a third-party subpoena on Namecheap.com.

## II.    STATEMENT OF FACTS

Plaintiff is the owner of federally registered trademarks for "LIPOZENE," a dietary supplement product sold nationally and online. *See* Declaration of Edgar

- 2 -

den Uijl (Uijl Decl.), ¶¶ 3-6. Plaintiff has used the "LIPOZENE" marks since 2003, investing heavily in developing and marketing its products through nationwide advertising campaigns. *See id.*, ¶¶ 3-11. The "LIPOZENE" word mark is incontestable, and Plaintiff's marks are widely recognized by consumers as indicating the origin of Plaintiff's goods. *See id.*

### A. Discovery of Infringement and Initial Enforcement Efforts

In September 2024, Plaintiff identified an online product that began appearing in search results for "Lipozene" being marketed and sold under the confusingly similar name "Lipozem." *See id.*, ¶ 12. The infringing product was offered through platforms such as Amazon.com, eBay, and Walmart as well as online domains including "Lipozem.com," which featured design elements and pricing designed to mimic those associated with "Lipozene." *See id.*, ¶ 16. Upon this discovery, Plaintiff immediately began investigating the supply and sale of the infringing product, working to determine the individuals or companies linked to the marketing and distribution of the "Lipozem" product. *See id.*, ¶ 19.

### B. Escalating Consumer Confusion and Online Proliferation

From October 2024 through April 2025, Plaintiff engaged in extensive enforcement efforts to protect its brand, including the submission of over 60 takedown notices to Amazon as well as similar requests to Walmart and eBay. *See id.*, ¶ 20. While some initial takedown efforts were temporarily successful, listings routinely reappeared under slightly altered product names, domain names, or sellers. Amazon ultimately ceased acting on Plaintiff's takedown requests due to volume, while Walmart and eBay explicitly refused further action absent a court order. *See id.*, ¶ 21.

During this same period, Plaintiff's customer service department began receiving calls and emails from confused consumers who believed they had purchased Plaintiff's "Lipozene" product but instead received inferior goods sold under the "Lipozem" name. *See id.*, ¶ 15. Several of these consumers even sought

returns or refunds from Plaintiff, believing that Plaintiff was affiliated with the Defendants' infringing products. *See id*. Plaintiff also notes that defendant BuyGoods's own filings in this case at times conflated the two marks, further reinforcing the prevalence of confusion in the marketplace.

### C. Filing Suit and Continued Infringement

In April 2025, shortly after identifying defendant BuyGoods and after nearly six months of largely unsuccessful attempts to privately enforce its intellectual property rights, Plaintiff initiated the present action. Shortly thereafter, the "Lipozem.com" website was taken offline, as acknowledged by Defendant BuyGoods in its opposition to the temporary restraining order. However, the infringing product reemerged almost immediately via the domain "Lipozem.org," which redirected to effectively the same product offering using the platform ClickBank as the payment processor.

Further, listings for infringing products like "Lipozem" or other similarly named offerings like "Lipo-zem," "Lipozeme," and "Lipozime" continue to arise on the E-Commerce Sites and on sites like the recently reactivated www.lipozem.com, continuing to degrade Plaintiff's valuable intellectual property while leaving Plaintiff with little recourse but to seek relief from this Court. *See id.*, ¶¶ 22, 24. Since initiating this litigation, Plaintiff has also identified additional infringing websites and products, including the domain "newlipozene.com" which offers a product labeled "Leptozan" and to which many of the former links to "Lipozem" products redirect. *See id.*, ¶ 23. The pricing and promotional format of the "newlipozene.com" website is also clearly drawn to mirror the former "Lipozem" website and Plaintiff's own offerings. *See id*. The design and tone of the "Leptozan" site suggest coordination with the same individuals or entities responsible for "Lipozem," and "Leptozan" is also offered for sale through defendant BuyGoods's platform. Finally, through its investigations Plaintiff has reason to believe that the individual who allegedly created the "Lipozem" product,

- 4 -

Dr. Julian Ross, allegedly an endocrinologist and researcher at Johns Hopkins, is nothing more than a fictional individual fabricated to lend credence to the inflated claims of an inferior, infringing product. Investigation into the operators of the "Leptozan" website, the E-Commerce Sites, and other derivative brands is ongoing. *See id.*, ¶ 19. Since filing this suit and proper service upon the Defendants, counsel for Defendants BuyGoods, Leoris Holdings, and Sunrise Selections have all made at least initial contact with Plaintiff's counsel. Settlements have been reached with Defendant BuyGoods and Defendant Leoris Holdings, and settlement discussions with Defendant Sunrise Selections are ongoing. Despite being properly served with the Complaint, Defendant Amaz Group has remained silent.

### D. Plaintiff Needs Judicial Intervention

Retail platforms that previously acted on Plaintiff's takedown notices are now declining further enforcement without judicial direction. *See id.*, ¶ 21. Amazon has stated it will no longer process Plaintiff's trademark complaints related to "Lipozem" and related marks due to the volume of takedown requests. *Id.* Walmart and eBay likewise have declined to act on listings for infringing products without a court order. *Id.* Despite its good faith enforcement efforts and attempts to resolve this matter without resorting to litigation, Plaintiff has been unable to halt the infringing conduct or properly identify the Doe Defendants. To make matters even worse, formerly deactivated websites such as www.lipozem.com have been reactivated and continue to list infringing products. The unauthorized use of confusingly similar marks on the E-Commerce Sites and sites like www.lipozem.com continues to harm Plaintiff's brand, confuse consumers, and damage Plaintiff's commercial reputation. If the Court does not allow Plaintiff to serve a third-party subpoena on Namecheap.com to identify the Doe Defendant operating the www.lipozem.com website, the infringement of Plaintiff's trademarks will persist unabated.

## III.    LEGAL STANDARD

As courts have long recognized, matters such as this one are "precisely the type of case for which expedited jurisdictional discovery is often appropriate, because plaintiff is ignorant of . . . the identity" of a Doe Defendant. *808 Holdings LLC v. Collective of Jan. 3, 2012 Sharing Hash*, No. CV 12-2251-CAS (EX), 2012 WL 13012725, at *5 (C.D. Cal. Oct. 1, 2012) (declining defendants' motion to reconsider the Court's order granting plaintiff's *ex parte* application to conduct expedited discovery) (citation omitted). Thus, "when a defendant's identity is unknown at the time the complaint is filed, a court may grant the plaintiff leave to take early discovery to determine the defendant's identity 'unless it is clear that discovery would not uncover the identit[y], or that the complaint would be dismissed on other grounds.'" *Malibu Media, LLC v. Doe*, 319 F.R.D. 299, 302 (E.D. Cal. 2016) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)); *Strike 3 Holdings, LLC v. Doe*, No. 18-12585 (NLH)(JS), 2020 WL 3567282 (D.N.J. June 30, 2020). "District courts in the Ninth Circuit have permitted expedited discovery prior to the Rule 26(f) conference upon a showing of 'good cause.'" *Malibu Media*, 319 F.R.D. at 302.

Good cause is shown where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (quoting *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F.Supp.2d 1160, 1179 (C.D. Cal. 2008)).

> In evaluating whether a plaintiff has established good cause to learn the identity of Doe defendants through early discovery, courts examine whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps previously taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) establishes that the discovery is likely to lead to identifying information that will permit service of process.

*Malibu Media*, 319 F.R.D. at 305 (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)). District courts in the Ninth Circuit have recognized that in cases involving trademark infringement over the internet, good cause can exist to grant early discovery for the purposes of identifying infringing defendants. *See, e.g., Pennymac Loan Servs., LLC v. Doe*, 2018 WL 6521577 (C.D. Cal. Oct. 31, 2018); *Whaleco Inc. v. Arslan*, 2024 WL 342459 (D. Ariz. Jan. 30, 2024); *AMA Multimedia LLC v. Unknown Parties*, 2015 WL 13651008 (D. Ariz. Sept. 23, 2015).

## IV.    ARGUMENT

As explained below, there is good cause for this Court to grant Plaintiff's Application for leave to serve a third-party subpoena on Namcheap.com.

Additionally, Defendants' lack of opposition to Plaintiff's Application constitutes consent to the granting of the request under Civil Local Rule 7.1.f.3.c.

### A. Plaintiff Identifies the Doe Defendant with Sufficient Specificity

"First, Plaintiff must identify the Doe defendant with enough specificity to enable the Court to determine that the defendant is a real person or entity who would be subject to the jurisdiction of this Court." *Quad Int'l, Inc. v. Doe*, No. CV 1:12-02050-AWI, 2013 WL 178141, at *3 (C.D. Cal. Jan. 16, 2013) (citing *Columbia*, 185 F.R.D. at 578). This factor implies two inquiries: whether the infringement can be traced back to a person or entity and whether this Court has personal jurisdiction over that party.

### 1.    *Plaintiff Has Identified That the Infringing Conduct Was Committed By Persons or Entities*

"A plaintiff may show that a defendant is a real person or entity by providing evidence of 'specific acts of misconduct that could only have been perpetrated by actual people, as opposed to a mechanical process.'" *Distinct Media Ltd. v. Doe Defendants 1-50*, No. CV 15-03312 NC, 2015 WL 13389609, at *2 (N.D. Cal. Sept. 29, 2015) (citation omitted). While certain aspects of sales performed through

- 7 -

the www.lipozem.com website may have default or automated functions, these operations cannot take place without human interaction. Effectively, but for the Doe Defendant directing the web store associated with www.lipozem.com to advertise, sell, and ship infringing products, the alleged infringement would not have occurred. Without conscious intervention by a person or an entity, infringing products are not listed, infringing products are not sold, and infringing products are not shipped from www.lipozem.com.

Here, the infringement occurs because this website is directed and controlled by individuals. Namecheap.com is in possession of information that can suitably identify the individuals in question. Accordingly, Plaintiff has sufficiently identified these individuals because Plaintiff has identified the website participating in the sale of infringing goods, and Plaintiff has identified that Namecheap.com is the host of the associated storefront. Effectively, Plaintiff has traced the allegedly infringing conduct to its physical point of origin. However, without this Court's leave to serve a third-party subpoena on Namecheap.com, Plaintiff is unable to further identify with specificity the parties engaging in infringement.

## 2. *This Court Has Personal Jurisdiction Over the Doe Defendants*

Because of the nature of the internet, it is unknown at this time whether the Doe Defendants are California residents or not, further demonstrating the need for early discovery. A nonresident defendant must have "certain minimum contacts" with California "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" for a California court to exercise personal jurisdiction over the defendant. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1935)). A nonresident defendant may be subject to either general or specific personal jurisdiction. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025). General personal jurisdiction allows a court to hear "any and all claims

against [defendants] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021).

Specific personal jurisdiction allows a forum state to assert jurisdiction over a nonresident defendant based upon "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)).

Specific personal jurisdiction is analyzed under a three-part test:

1. The non-resident defendant must purposefully direct [their] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [they] purposefully avail [themselves] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2. The claim must be one which arises out of or relates to the defendant's forum-related activities; and

3. The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "[P]laintiff bears the burden of establishing that jurisdiction is proper" and "has the burden of proving the first two prongs." *Mavrix Photo, Inc.*, 647 F.3d at 1223; *see also Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). If the plaintiff meets the burden imposed by the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017) (quoting *Schwarzenegger*, 374 F.3d at 802).

For claims sounding in tort such as infringement, the Ninth Circuit most

often employs a purposeful direction analysis that utilizes the "*Calder* effects" test,
which "focuses on the forum in which the defendant's actions were felt, whether or
not the actions themselves occurred within the forum." *Mavrix Photo*, 647 F.3d at
1228 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433
F.3d 1199, 1206 (9th Cir. 2006) (en banc)); *see also Ayla, LLC v. Alya Skin Pty.
Ltd.*, 11 F.4th 972, 929 (9th Cir. 2021) (applying purposeful direction analysis in
trademark case because "[t]rademark infringement is treated as tort-like for
personal jurisdiction purposes"). This test requires that the defendant:

  1. Commit an intentional act, which is;

  2. Expressly aimed at the forum state; and

  3. Which causes harm that the defendant knows will be suffered in the forum
     state.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)
(quoting *Yahoo! Inc.*, 433 F.3d at 1206).

  In the context of e-commerce, the Ninth Circuit has found "express aiming"
where the defendants sold a physical product via an interactive website and caused
that product to be delivered to a forum state. *See Herbal Brands, Inc. v. Photoplaza,
Inc.*, 72 F.4th 1085, 1094 (9th Cir. 2023). "Pre-internet, the 'distribution in the
forum state of goods originating elsewhere' was a paradigmatic example of conduct
purposefully directed at the forum state." *Id.*, at 1093 (first quoting
*Schwarzenegger*, 374 F.3d at 803; and then citing *Goodyear Dunlop Tires
Operations, S.A.*, 564 U.S. at 927). For e-commerce, the Ninth Circuit has found
that a defendant engages in "express aiming" where its product sales "occur as part
of the defendant's regular course of business instead of being 'random, isolated, or
fortuitous'" and "the defendant [exercises] some level of control over the ultimate
distribution of its products beyond simply placing its products into the stream of
commerce." *Herbal Brands, Inc.*, 72 F.4th at 1094 (quoting *Keeton*, 465 U.S. at
774).

The Ninth Circuit has repeatedly held that "express aiming" does not require a forum-specific focus or differential targeting. *See Herbal Brands, Inc.*, 72 F.4th at 1094 ("[T]he express aiming inquiry does not require a showing that the defendant targeted its advertising or operations at the forum."); *see also Briskin*, 135 F.4th at 757 ("*AMA's* rationale requiring a 'forum-specific focus' or 'differential targeting,' as the concept has been more recently described, is incorrect, and we now overrule it."). Rather, a defendant operating an interactive website "expressly aims" their wrongful conduct toward a forum state when the defendant's contacts are the defendant's own choice and not random, isolated, or fortuitous, even if the defendant's website cultivates a nationwide audience for commercial gain. *See id.*, at 758; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (reasoning that when a company serves "directly or indirectly, the market for its product" in many states, "it is not unreasonable to subject it to suit in one of those States," if its product causes harm there).

### i. Doe Defendants Committed an Intentional Act By Taking Orders From and Shipping Products to California

The first element of the *Calder* effects test requires a defendant to commit an intentional act. *See Brayton Purcell LLP*, 606 F.3d at 1128 (quoting *Yahoo! Inc.*, 433 F.3d at 1206). The Ninth Circuit has recognized that the act of trademark infringement fundamentally requires an intentional tortious or "tort-like" act on the part of a defendant. *See Herbal Brands, Inc.*, 72 F.4th at 1091.

In the matter at hand, the Doe Defendants willfully marketed infringing products through an interactive website, received consumer information in the form of orders for those products, and intentionally acted to fulfill those orders by allegedly shipping products to consumers, both in California and nationwide. Doe Defendants also allegedly received payments from California consumers. Doe

- 11 -

Defendants' acts and conduct are intentional—the Doe Defendants control the very means by which orders are received and processed! And yet, the Doe Defendants allegedly shipped infringing product to California anyways, displaying utter disregard for the consequences of their conduct. The record is clear. The Doe Defendants' acts are intentional. *See Herbal Brands, Inc.*, 72 F.4th at 1091 ("Defendants' sale of products to Arizona residents is an intentional act, and the cease-and-desist letters informed Defendants that their actions were causing harm in Arizona.").

Because the Doe Defendants' acts were intentional, the first element of the *Calder* effects test is met.

### ii.  Doe Defendants' Conduct Was Expressly Aimed at California Because Doe Defendants' Sales Occurred in the Regular Course of Business and Were Under Doe Defendants' Control

The second element of the *Calder* effects test requires that the defendant's intentional act is expressly aimed at the forum state. *See Brayton Purcell LLP*, 606 F.3d at 1128 (quoting *Yahoo! Inc.*, 433 F.3d at 1206). The Ninth Circuit has found that sales of physical products into a forum via an interactive website constitute express aiming so long as the sales occur as part of the regular course of the defendant's business and the defendant maintains some level of control over the distribution of its products. *See, e.g., Herbal Brands, Inc.*, 72 F.4th at 1094; *Briskin*, 135 F.4th at 758 ("We therefore hold that an interactive [website] 'expressly aims' its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that [website] cultivates a nationwide audience for commercial gain.") (internal quotations and citations omitted). There is no requirement for differential treatment or targeting of the forum for a finding of express aiming of allegedly tortious conduct, and such a requirement runs contrary

- 12 -

1   to longstanding Supreme Court authority. *Id.; see also World-Wide Volkswagen*

2   *Corp*, 444 U.S. at 297 (reasoning that when a company serves "directly or

3   indirectly, the market for its product" in many states, "it is not unreasonable to

4   subject it to suit in one of those States," if its product causes harm there); *Ayla,*

5   *LLC*, 11 F.4th at 979 ("Trademark infringement is treated as tort-like for personal

6   jurisdiction purposes.").

7        The facts of this matter align well with those of *Herbal Brands, Inc. v.*

8   *Photoplaza, Inc.*, where the Ninth Circuit found that a defendant operating an

9   interactive website allegedly selling physical goods into the forum was subject to

10   specific personal jurisdiction. 72 F.4th 1085 (9th Cir. 2023). In *Herbal Brands*, the

11   defendants allegedly operated Amazon storefronts to make product sales to

12   consumers within the subject forum. *See id.* at 1094. The storefronts were allegedly

13   operated under the names of the involved business entities, offered a variety of

14   allegedly infringing products, and conducted sales throughout the country. *See id.*

15   The Court found that the operation of the storefronts was in the regular course of

16   business for the defendants but was careful to describe that the inquiry is case

17   specific. *See id.* ("Whether a sale occurs in a defendant's regular course of business

18   is a case-specific question that may turn on factors such as the seller's identity

19   (individual or a business entity), the nature of the website used, the defendant's total

20   volume of online sales including sales outside the forum, the number or variety of

21   products offered on the defendant's website, and the defendant's online

22   advertising.").

23        Importantly, the Ninth Circuit also expressly stated that "[t]he outcome of the

24   express-aiming inquiry does not depend on the number of sales made to customers

25   in the forum." *Id.* at 1095. "If one sale were not enough to establish that a defendant

26   expressly aimed its conduct at a forum, we would face the difficult question of how

27   many sales would suffice." *Id.* While the Ninth Circuit's holding "answer[ed] only

28   the narrow question whether a defendant's sale of a physical product to a consumer

- 13 -

1   in the forum state via an interactive website constitutes conduct expressly aimed at

2   a forum," that is exactly the narrow question presented by the facts of the matter at

3   hand. *Id.*

4       Here, much as in *Herbal Brands*, Doe Defendants operate an e-commerce

5   storefront in the form of an interactive website that consumers utilize to make

6   purchases of products directly from Doe Defendants. *See id.*, at 1092 ("Here, it is

7   undisputed that Defendants' Amazon storefronts are interactive websites: visitors

8   can exchange information with the host computer by inputting data directly."); *see*

9   *also id.*, n.1 ("[W]e use the term 'Amazon storefront' to describe an e-commerce

10  store that is hosted on the Amazon platform and operated by a business to advertise

11  and sell its products."). While Doe Defendants' website is hosted by

12  Namecheap.com, not Amazon, the website is a functional equivalent as it requires

13  consumers to exchange information with the host computer by inputting data

14  directly in order to complete a purchase.

15      Just as in *Herbal Brands*, Doe Defendants are individuals or business entities

16  who operate their interactive website to sell products directly to consumers under a

17  business entity's name. *See id.* at 1094 ("Defendants operated their storefronts

18  under the names of business entities."). Doe Defendants' business entities appear as

19  business-to-consumer retail businesses, formed to sell products to the public. Doe

20  Defendants' website is interactive by nature because consumers must select

21  products to purchase and then input their shipping and payment information to

22  complete the transaction—Doe Defendants' websites is not merely a source of

23  information that passively disseminates content to the world. *See id.* at 1091 ("More

24  than two decades ago, we recognized a distinction between 'passive' websites that

25  merely make information available to visitors and 'interactive' websites, where

26  'users can exchange information with the host computer when the site is

27  interactive.'") (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th

28  Cir. 1997)). The storefronts of www.lipozem.com website requires consumer

- 14 -

interaction by the very nature of Doe Defendants' business activities. In light of these facts, the regular course of Doe Defendants' business clearly involves the operation of an interactive website to facilitate the sale of merchandise directly to consumers. "When an online sale occurs as part of a defendant's regular course of business, it 'arises from the efforts of the [seller] to serve directly or indirectly [] the market for its product. . .,' and the defendant 'should reasonably anticipate being haled into court.'" *Herbal Brands, Inc.*, 72 F.4th at 1094 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

"[T]he express aiming inquiry does not require a showing that the defendant targeted its advertising or operations at the forum." *Herbal Brands, Inc.*, 72 F.4th at 1094; *see also Briskin*, 135 F.4th at 757 ("*AMA*'s rationale requiring a 'forum-specific focus' or 'differential targeting,' as the concept has been more recently described, is incorrect, and we now overrule it."). The defendant must only exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce. *See Herbal Brands, Inc.*, 72 F.4th at 1094. Here, Doe Defendants have done just that; Doe Defendants allegedly received consumer information including payment and shipping data, then allegedly knowingly utilized that information to deliver products into this forum despite being on notice that a California plaintiff would suffer harm due to Doe Defendants' actions because of the fame of Plaintiff's marks, which marks Plaintiff has spent millions of dollars promoting. Doe Defendants "[chose] to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states." *Id.* at 1094.

Here, just as the Ninth Circuit found in *Herbal Brands*, "[Doe] Defendants expressly aimed their conduct at [California] because they allegedly sold products to [California] residents via an interactive website in their regular course of business and caused those products to be delivered to the forum." *Id.* at 1095. Accordingly, the Doe Defendants are subject to this Court's personal jurisdiction,

1   and the second element of the *Calder* effects test is met.

2           ### iii.   *Defendants Knew Their Conduct Would and Was*
3           ### *Causing Harm*

4           The third element of the *Calder* effects test requires that the defendant's act

5   "causes harm that the defendant knows will be suffered in the forum state." *Brayton*

6   *Purcell LLP*, 606 F.3d at 1128 (quoting *Yahoo! Inc.*, 433 F.3d at 1206). As alleged,

7   Doe Defendants willingly shipped infringing products to California consumers

8   despite knowing of Plaintiff's famous trademark and associated rights, as Plaintiff's

9   trademark is famous. Accordingly, Doe Defendants were aware that harm would

10  occur in California because Plaintiff is located in California. Despite knowing harm

11  would occur in California due to their actions, Doe Defendants did not cease their

12  infringing conduct. Even now, Doe Defendants listings and sales continue on the

13  www.lipozem.com website, which was initially taken down and recently reinstated.

14          Because Doe Defendants knew their conduct was causing harm to a

15  California plaintiff, the third element of the *Calder* effects test is satisfied.

16          ### iv.   *Calder Effects Test for Purposeful Direction*
17          ### *Conclusion*

18          Here, Plaintiff's allegations clearly establish that all three elements of the

19  *Calder* effects test are satisfied. Doe Defendants committed an intentional act that

20  was expressly aimed at California, knowing their conduct would cause harm in

21  California. Because all three elements are met, Doe Defendants' conduct

22  underlying this lawsuit accordingly constitutes purposeful direction towards

23  California and the Southern District, such that this Court's exercise of personal

24  jurisdiction over Doe Defendants is proper.

25          ### v.   *Plaintiff's Claim Arises Out of Doe Defendants'*
26          ### *Forum-Related Activities*

27          The second prong of the specific personal jurisdiction inquiry requires a

28  plaintiff to demonstrate that the claim arises out of or relates to the defendant's

forum-related activities. *See Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817
F.2d at 1421).

 In the matter at hand, there is no doubt that Plaintiff's claims arise out of Doe
Defendants' forum-related activities. As described above, Doe Defendants
knowingly made infringing sales to California consumers despite knowing harm
would occur to Plaintiff. The Ninth Circuit has recognized that this element is
satisfied in trademark infringement actions if the defendant's infringing conduct
harms the plaintiff in the forum. *See, e.g., Panavision Int'l, L.P. v. Toeppen*, 141
F.3d 1316, 1322 (9th Cir. 1998); *see also CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066, 1079 (9th Cir. 2011) (trademark infringement claim "arises out of
the actions of [defendant]" where defendant allegedly infringed plaintiff's
trademark, knowing that plaintiff was located in California); J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* § 32:38.40 (5th ed.) ("[A]lmost
all courts hold that a claim of trademark infringement occurs where the allegedly
infringing sales are made."). Here, Plaintiff has shown that Doe Defendants' alleged
infringement harmed Plaintiff, a California-based business, in the Southern District
by causing consumer confusion in California, depriving Plaintiff of revenue, and
diminishing Plaintiff's goodwill and reputation. Doe Defendants' actions have also
required Plaintiff to expend significant amounts on advertising in an attempt to
remediate Doe Defendants' infringement of Plaintiff's intellectual property. But for
Doe Defendants' infringing activities, Plaintiff would not have suffered injury.

 Accordingly, the second prong of the specific personal jurisdiction inquiry is
met, such that it is proper for this Court to exercise personal jurisdiction over the
Doe Defendants. This factor thus favors granting expedited discovery.

### 3. *Plaintiff Has Identified All Previous Steps Taken to Locate the Unknown Doe Defendants*

 "Next, Plaintiff must identify all previous steps taken to identify the Doe
Defendant in a good faith effort to locate and serve it." *Malibu Media, LLC v. Doe*,

- 17 -

No. CV 16-1916-GPC (JMA), 2016 WL 6216183, at *2 (S.D. Cal. Oct. 25, 2016) (citing *Columbia Ins. Co.*, 185 F.R.D. at 579). Here, Plaintiff has diligently attempted to correlate Doe Defendants' shop information by searching for information about the associated sellers on various web search tools, including utilizing basic search engines like http://www.google.com and utilizing tools like those found on lookup.icann.org. Plaintiff has further conducted this diligent search by investigating the www.lipozem.com website itself, but the presented information is not sufficient to suitably identify the Doe Defendants operating the site in question. As a result, Plaintiff has been unable to identify any other way to go about obtaining the identities of these infringing parties and Plaintiff does not know how else it could possibly enforce its trademark rights from illegal infringement over the Internet. "Because the transactions at issue occurred entirely online, the IP addresses and ISPs are the defendants' only available identifying information. Without discovery, there are no other measures Plaintiff can take to identify the Doe defendants or obtain their personal information." *Malibu Media, LLC v. Does*, No. CV 12-0651-DOC (JPRx), 2012 WL 13019945, at *1 (C.D. Cal. May 10, 2012). Thus, Plaintiff has exhausted its alternatives for identifying these Doe Defendants.

### 4. *Plaintiff's Complaint Could Withstand a Motion to Dismiss*

Plaintiff's Complaint could and would withstand a motion to dismiss. This factor acts as a gatekeeper designed to "prevent abuse of this extraordinary application of the discovery process and to ensure that plaintiff has standing to pursue an action against defendant." *Columbia Ins. Co.*, 185 F.R.D. at 579-80 (citation omitted).

As this is an action for trademark infringement, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (jurisdiction over trademark actions). As described above, the Court also has personal jurisdiction over the Doe Defendants because these defendants'

infringement took place within the geographic scope of this Court's jurisdiction and the *Calder* effects test indicates exercise of jurisdiction over these defendants is proper. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) and (c). Accordingly, Plaintiff alleges facts that are likely to withstand a motion to dismiss for lack of personal jurisdiction or improper venue.

Finally, "[t]o survive a motion to dismiss [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's Complaint would survive such a motion. This Court has already recognized that Plaintiff has a likelihood of success on the merits of its claims. *See* Order Denying Temporary Restraining Order (Dkt. 15), p. 6. As a result, Plaintiff has made a prima facie case against Doe Defendants and thus demonstrated good cause for leave to take early discovery.

### 5. There is a Reasonable Likelihood that Plaintiff Can Identify the Doe Defendants and Effectuate Service

Plaintiff knows that the www.lipozem.com website facilitates Doe Defendants' sales of infringing goods because Doe Defendants' webstore is presented directly on that site, and Doe Defendants' sales are processed through the site. The subpoena seeks the names, addresses, and contact information of these Doe Defendants, which are currently unknown to Plaintiff. Once these Doe Defendants are identified, Plaintiff will be able to amend its complaint to properly name the Doe Defendants and with the contact information for these defendants, Plaintiff can serve a summons upon the defendants pursuant to Fed. R. Civ. P. 4(a) and (e) (requiring Plaintiff to name defendants and effectuate service on them). "The information Plaintiff seeks through service of the subpoena will likely lead to identifying information, including Defendant's name and address, which should allow Plaintiff to effect service of process on Defendant." *Malibu Media*, 319

F.R.D. at 306.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff leave to issue a Rule 45 subpoena to Namecheap.com regarding the owners and operators of the www.lipozem.com website.

Date: October 27, 2025                    By: /s/ Andrew Robert Cowan

Andrew R. Cowan, Esq.
andrew@camutilaw.com
CAMUTI LAW GROUP APC
33 Brookline
Aliso Viejo, CA 92656
Telephone: 949.716.5565

*Attorneys for Plaintiff*

1

## **PROOF OF SERVICE**

2

     I hereby certify that the foregoing Memorandum of Points and Authorities

3

in Support of Plaintiff's *Ex Parte* Application for Leave to Serve Third-Party

4

Subpoenas, as well as any documents accompanying this filing, has been served

5

on Defendant Sunrise Selections counsel in the above referenced matter on

6

October 24, 2025, via electronic mail to: lgigliotti@bellsouth.net. The

7

aforementioned documents were served on Defendant Amaz Group via overnight

8

mail delivery, initiated on October 24, 2025.

9

10

Dated: October 27, 2025          By: /s/ Andrew Robert Cowan

11

                         Andrew R. Cowan, Esq.
                         andrew@camutilaw.com

12

                         CAMUTI LAW GROUP APC

13

                         33 Brookline
                         Aliso Viejo, CA 92656

14

                         Telephone: 949.716.5565

15

16

                         *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION
FOR LEAVE TO SERVE THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE